# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **GERALDINE B. HILL,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10CV00022 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **HARTFORD LIFE AND** ) | By: James P. Jones |
| **ACCIDENT INSURANCE** ) | United States District Judge |
| **COMPANY,** ) | |
| ) | |
| Defendant. ) | |

*Paul G. Beers, Glenn, Feldmann, Darby & Goodlatte, Roanoke, Virginia, for Plaintiff; Kevin W. Holt, Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Defendant.*

The plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001-1461 (West 2000 & Supp. 2010), challenging the decision of Hartford Life and Accident Insurance Company ("Hartford") to terminate her long term disability benefits. For the reasons set forth in this opinion, the matter is remanded.

I

The plaintiff, Geraldine B. Hill, seeks review of Hartford's decision to terminate her long-term disability ("LTD") benefits under the provisions of its Group

Long Term Disability Plan ("the Plan"). Hartford has filed the administrative record of its decision, and based on that record, both parties have moved for summary judgment. The issues have been briefed and argued, and the case is ripe for decision.

The facts are as follows. Hill, who is currently 56 years old, was employed as a hospital director of home health nursing for 16 years. Her employer provided LTD benefits through the Plan to its employees, with claims administered and paid by Hartford. The Plan provides LTD benefits for claimants who are "Totally Disabled." "Total Disability" occurs when

(1) during the Elimination Period; and

(2) for the next 36 months, you are prevented by:

 (a) accidental bodily injury;

 (b) sickness;

 (c) mental illness;

 (d) substance abuse; or

 (e) pregnancy,

from performing the essential duties of your occupation. . . . After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience.

(HL 00008.)[1]

In December 2002, after suffering a back injury, Hill applied for disability benefits under the Plan. Hartford awarded Hill benefits on February 11, 2003, and paid benefits through October 30, 2008. In March 2004, a functional capacity evaluation ("FCE") was performed, and it was determined that Hill was able to do less than sedentary work. The evaluator felt that Hill had given her full effort and that her reports of pain and disability were reliable.

Hill has had spine surgeries in May 1991, August 2001, and June 2003. On March 5, 2008, she had her fourth spine surgery. Following the fourth surgery, Hill reported to her neurologist, James Brasfield, M.D., "that the severe pain she had in her right leg has made excellent benefit. She still has some discomfort. However, the relief is very dramatic." (HL 00560.)

Hartford referred Hill's file to a consultant of its choosing, Elena Antonelli, M.D., to prepare a case report regarding Hill's disability and functional limitations. Dr. Antonelli's review included an analysis of Hill's medical records, discussion with two of Hill's physicians, and consultation with a vocational expert. When Dr. Antonelli spoke with Dr. Brasfield, he stated that Hill was disabled but that he did not want to be quoted. Dr. Antonelli concluded that Hill was capable of full-time

---

[1] The reference is to the administrative record supplied by Hartford.

sedentary work subject to several limitations. Hartford adopted Dr. Antonelli's findings and, on October 31, 2008, terminated Hill's disability benefits.

Hill filed an administrative appeal of her termination of benefits on November 12, 2008. In her appeal letter, she acknowledged that after her last surgery, her pain did seem to improve but stated, "Now it is like I never had the surgery." (HL 00305.) During the pendency of the appeal, Hartford requested that Hill undergo another FCE. The FCE was scheduled for February 19, 2009. On the date of the scheduled FCE, Hill sent a fax to Hartford explaining that she had been advised by Dr. Brasfield not to have the FCE and referred any questions to him. At that time, Hartford sent a letter to Hill requesting documentation of her inability to attend the FCE or a prescription for an FCE by March 12, 2009. Hill sent two faxes to Hartford asking them to contact Dr. Brasfield with regard to the requested information.

The termination of Hill's benefits was reviewed at Hartford's request by two consultants, James Bress, M.D., and E. Franklin Livingstone, M.D. Drs. Bress and Livingstone concluded that the medical evidence supported Hartford's decision to terminate Hill's benefits. The termination of benefits was upheld by Hartford in a letter dated April 28, 2009. Hill then sought review in this court. She seeks an order directing Hartford to reinstate her benefits, or in the alternative, remanding the matter to Hartford for further evidentiary development and a new disability determination.

II

It is undisputed that Hartford has discretionary authority to interpret the provisions of the Plan. A fiduciary's discretionary decision under ERISA is reviewed for abuse of discretion, and the decision will not be disturbed if it is reasonable. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). In evaluating the reasonableness of a fiduciary's discretionary decision, a court may consider the following factors, among others:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id*. at 342-43.

A conflict of interest exists where a plan administrator serves the dual role of evaluating claims for benefits and paying the claims. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). A conflict of interest does not change the standard of review from the deferential view normally applied, but "whenever a plan administrator employs its interpretive discretion to construe an ambiguous provision in favor of its financial interest, that fact may be considered as a factor weighing

against the reasonableness of its decision." *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 261 (4th Cir. 2009).

III

When Hartford made its determination that Hill was no longer disabled, it did not credit several pieces of evidence in her favor, including statements from Dr. Brasfield, results from an FCE performed in 2004, and Hill's sucessful application for social security benefits. Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), and in the absence of justification, disregarding such evidence may indicate an abuse of discretion. *See Glenn*, 128 S.Ct. at 2352. Hartford defends its decision by asserting that Hill's health improved following her 2008 surgery. (HL 00036; Pl.'s Brief at 23-24, 35.) Therefore, the appropriateness of disregarding the evidence in this matter depends largely on the degree to which Hill's health has improved.

The record with regard to Hill's improvement is unclear. Hartford appears to have assumed that Hill was no longer disabled after her surgery, but evidence available to Hartford during the initial decision and during the administrative appeal undermines that assumption. Another FCE, which was intended to assist in clarifying

6

the issue, was not performed, and there is confusion in the record regarding why the FCE was not performed.

The threshold issue of Hill's improvement must be resolved before one can determine whether Hartford's decision was supported by substantial evidence. As Dr. Antonelli's report states, "any limitations depend on the outcome of the surgery. After fusion surgery, patients may have continued pain or even increasing pain." (HL 00540.) She concludes, "However, as of the most recently available information, there is no objective indication of disabling pain. She had dramatic improvement in her pain after her lumbar spine surgery on 03/05/08." (*Id.*)

Hartford's adoption of Dr. Antonelli's conclusion regarding the effect of Hill's surgery is questionable. First, there is nothing in the record to indicate that Hill's improvement was so dramatic as to remove her disability. Second, Dr. Antonelli acknowledged the possibility that patients may have continued pain or even increasing pain after fusion surgery. Third, there is conflicting evidence regarding the continuation of Hill's pain. Hartford had evidence that Hill continued to suffer from disabling pain. Hartford spoke with Hill on October 29, 2008, after the completion of Dr. Antonelli's report. During that conversation, Hill stated that the results of the surgery were good at first but that her symptoms, particularly pain in her right leg, had returned. She said that she uses a cane on uneven surfaces, has a limp,

and has drop foot in her left foot. This statement was the most recent information available to Hartford prior to the initial termination of benefits.

However, Hartford maintains that there is "no objective indication of disabling pain" (HL 00036) and insists that Hill's statements to her doctors are more reliable than her statements to Hartford. Notably, Hartford cannot point to any test that was performed after the surgery that would have documented either improvement or continued disability. All post-surgery evidence regarding improvement or continued disability refers to subjective, not objective, indications of pain. Hill's self-reported "dramatic improvement" is undermined by her subsequent statements, recounted but not given any weight the termination letter, indicating that "the results were good at first but now [her] symptoms have returned." (HL 00036.)

The record does indicate that, during the administrative appeal, Hartford attempted to better determine the degree of Hill's disability after her surgery. Prior to obtaining a prescription for an FCE, Hartford wrote Hill and told her that it was unable to make a decision regarding her appeal during the initial 45-day period because "an independent [FCE] [was] needed to evaluate [her] claim on appeal." (HL 00028.) Hartford obtained the prescription for the FCE "[i]n order to gain a better understanding of [Hill's] functionality." (HL 00022.) When Hartford scheduled the FCE, it hold Hill that the FCE was "necessary to evaluate [her] claim on appeal."

8

(HL 00026.) Given the conflicting evidence regarding the effect of the surgery, an FCE would likely have clarified Hill's current disability status and provided the objective evidence Hartford required.

There is some confusion in the record regarding why the FCE was not performed. According to Hill, Dr. Brasfield advised her not to have the FCE. Hill repeatedly provided Dr. Brasfield's contact information for Hartford to get any clarification it required. Although Dr. Brasfield apparently did not provide the appropriate information to Hartford, Hill appears to have attempted to comply with all of Hartford's requests for information.[2] However, when Dr. Bress spoke with Mark Mehlferder, P.A., an employee at Dr. Brasfield's practice, Mehlferder said that there was no reason why Hill could not have an FCE. Hartford interpreted Mehlferder's statement to mean that Hill could have had the FCE on February 19, but it is not clear what Mehlferder meant. Notably, Mehlferder made several misstatements during the conversation with Dr. Bress. For example, he said that Dr.

---

[2] Hill was not informed that Dr. Brasfield had not complied with any requests that had been sent to his office. By failing to inform Hill of the situation, Hartford denied Hill the opportunity to contact Dr. Brasfield on her own and obtain the requested information. *See Dunbar v. Orbital Sci. Corp. Group Disability Plan*, 265 F. Supp. 2d 572, 584 (D. Md. 2003) ("[The insurer] should have informed [the claimant] that job evaluations would have been helpful in evaluating [the] claim and that [the employer] had failed to respond to [the] request. By failing to so inform [the claimant], he was denied the opportunity to contact [the employer] on his own and obtain the evaluations.").

9

Brasfield did not put Hill on disability and that Hill was disabled due to neck pain rather than back pain.

Given the inconsistencies between what Mehlferder allegedly said and the statements from Dr. Brasfield, there is a question as to Mehlferder's reliability. It is unclear why Dr. Bress spoke to Mehlferder, and not Dr. Brasfield. Nothing in the record indicates that Dr. Bress attempted to speak to Dr. Brasfield, and it is unclear whether Mehlferder ever examined Hill or even had her chart before him when he answered Dr. Bress's questions. Nevertheless, Dr. Bress's decision relies in part on the statements from Mehlferder, and Mehlferder's statements were cited in Hartford's second termination letter.

The administrative record before Hartford at the time it denied benefits to Hill was inadequate to allow this court to conduct a meaningful review of the decision. The efforts made on appeal were insufficient to clarify Hill's disability status, and the addition of statements from Mehlferder only further confused the situation. Without the FCE, Hartford again relied on the assumption that Hill's improvement removed her disability and made certain evidence irrelevant.

Despite the confusion about Hill's failure to appear at the FCE, the lack of an FCE was used against Hill on appeal. Hartford referred to Hill's "lack of cooperation in attending the FCE." (HL 00022.) Dr. Livingstone stated that Hill's unwillingness

to participate in an FCE "may reflect motivational issues," and Hartford recounted this statement in its second termination letter. (R. at 00023.) Hill has filed medical records with her Complaint from Dr. Brasfield's office indicating that he had advised Hill to wait before undergoing the requested FCE. Hartford has moved to strike these documents, but because they highlight the evident confusion, I believe they are relevant. In any event, there is no question that Hill is now ready and able for the FCE that Hartford wanted.

     Because ERISA cases involve complex medical issues critical to the interpretation and application of plan terms, district courts have flexibility to augment records when necessary. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 363-63 (4th Cir. 2008). Although there was no duty on Hartford to obtain an FCE, its actions and statements indicate that the results of an FCE would have been relevant, if not necessary, in evaluating the claim. *See Dunbar*, 265 F. Supp. 2d at 583-84 (rejecting the insurer's argument that job performance evaluations were not required because the actions and statements of the insurer's representatives showed that the evaluations are relevant and important); *see also Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (4th Cir. 1985) ("Although the trustees do not labor under a statutory duty to secure specific forms of evidence, their obligations as fiduciaries and the promise of the plan to make monthly payments 'for as long as the Participant continues to be

11

Totally Disabled' preclude a denial of benefits without evidentiary foundation." (citation omitted)). Because there is insufficient evidence to determine the scope and duration of Hill's improvement–and thus to determine the appropriateness of disregarding portions of the record–the case must be remanded to Hartford. *See Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 785 (4th Cir. 1995) (holding that remand is appropriate when the administrative record at the time of the benefit determination contained insufficient evidence to allow the district court to adequately review the denial of benefits). On remand, an FCE can be performed, allowing Hartford the opportunity to reconsider the appeal of denial of benefits with the information it sought.

IV

For the foregoing reasons, each party's Motion for Summary Judgment will be denied. The defendant's Motion to Strike will be denied. The plaintiff's alternative Motion to Supplement the Administrative Record and Remand will be granted. A separate order will be entered forthwith remanding the case for further proceedings consistent with this Opinion.

DATED: October 14, 2010

/S/ JAMES P. JONES
United States District Judge